IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

Case No. 3:22-CR-00057-FDW-DCK
3:15-CR-00025-FDW-1

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MALIK D'VONDE SHROPSHIRE,<br><br>Defendant. | SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE |

Defendant, Malik Shropshire, respectfully requests that the Court grant the government's Motion for Downward Departure (Doc. No. 17) and then vary downward to impose a sentence of fewer than 18 months for the new offense (3:22-CR-57) ("SBA Matter") and the supervised release violations in 3:15-CR-25 ("SRV Matter") *combined*. The principal reasons for this request are:

- Although the government's suggested downward departure is appreciated, a lower sentence than the government recommends is appropriate because the proposed departure does not take into account the personal risk and other unusually large sacrifices that Mr. Shropshire undertook while cooperating.

- The supervised release violation sentence of 33 months in the SRV Matter overstates the wrongdoing to which Mr. Shropshire pled guilty in that matter.

- The supervised release violation range is based on a Criminal History Category of VI, but the SBA Matter range is based on a Criminal History Category of V.

The higher SRV Criminal History Category further causes the SRV Matter range to be overstated.

- Mr. Shropshire suffered a horrifically abusive childhood.

- Notwithstanding his horrifically abusive childhood, as the Letters of Support attached as <u>Exhibit A</u> demonstrate, Mr. Shropshire is a good person who makes a positive contribution to those around him.

- Because of his abusive childhood, he is overly influenced by his sister, who prompted him to commit the crime in this case and the crime in the 2015 case.

I. PROCEDURAL POSTURE & CALCULATING THE GUIDELINES RANGE

The Plea Agreement in the SBA Matter (Doc. No. 3) resolves both the SBA Matter and the SRV Matter. Therefore, both are addressed in this Memorandum. In the Plea Agreement, Mr. Shropshire pleads guilty to Counts One (violation of 18 U.S.C. § 1343, Wire Fraud) and Two (18 U.S.C. §§ 1014 and 2, False Statements to the SBA and Aiding and Abetting) in a Bill of Information for the SBA Matter. Doc. No. 3, ¶ 1. Based on a Criminal History Category of V and an Offense Level of 9, the Presentence Investigation Report ("PSR") correctly suggests a guideline imprisonment range of 18 to 24 months for the SBA Matter. Doc. No. 14, ¶ 94. However, if the Court grants the government's Motion for Downward Departure, the range for the SBA Matter would be 6 months.

The SBA Matter Plea Agreement also stipulates that Mr. Shropshire admits to Violations One and Three in the supervised release violation petition (Doc. No. 31) and Violations Four and Five in the supervised release petition addendum (Doc. No.

40). Violation One covers the same conduct as the offense conduct in the SBA case – the false SBA application and is a Grade A Violation. Doc. No. 31, p.1. Violation Three is a Grade C violation for failure to make required court payments. Doc. No. 31, p. 2. Violation Four arose because Mr. Shropshire made a false statement about his employment status on an application for a $34,700 truck loan on which he has made regular payments, and is a Grade A violation. Doc. No. 40, p. 1. Violation Five is a Grade C violation imposed because Mr. Shropshire applied for the aforementioned truck loan without prior authorization of Probation. Doc. No. 40, p. 1. In a second Addendum to the SRV Petition (Doc. No. 47), Probation clarified that the highest guidelines range for Mr. Shropshire's Grade A violations (Violations One and Four, based on Count 7 (violation of 18 U.S.C. § 1014 and 2) in the original SRV Matter Indictment (Doc. No. 3) is 33-36 months. Doc. No. 47, p. 2, Section Regarding "Violation #s 1 and 4 for Count #7". *See also* U.S.S.G. § 7B1.4.[1] In the Plea Agreement, the government agrees to recommend the low end of this range, 33 months. Doc. No. 3, ¶ 2. With an SBA Matter range of 6 months and an SRV Matter range of 33 months, this would yield a starting recommended range of 33 months. In correspondence dated November 29, 2022, the government indicated that it would recommend that the sentences for the SRV Matter and SBA Matter should be run concurrently and that it would ask for a five month downward variance, for a government

---

[1] The Criminal History Category for the SRV Matter is VI, but it is V for the SBA Matter. This is because "The criminal history category to be used in determining the applicable range of imprisonment in the Revocation Table is the category determined at the time the defendant originally was sentenced to the term of supervision." U.S.S.G. § 7B1.4, cmt. 1.

recommendation of 28 months on both the SRV and SBA Matters. From there, Mr. Shropshire suggests that the Court vary another ten months downward to 18 months or fewer, for the reasons discussed in this Memorandum.

## II. THE SRV AND SBA MATTER SENTENCES CAN RUN CONCURRENTLY

Both Mr. Shropshire and the government (according to correspondence on November 28 and 29, 2022) will recommend that the Court run the SRV and SBA Matter sentences concurrently. Guidelines § 7B1.3(f) states that "[a]ny term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving…." However, this advisory statement is not binding on the Court. In *United States v. Murph*, Judge Britt acknowledged the language of § 7B1.1(f), but concluded that "a concurrent sentence is warranted." No. 7:94-CR-00036-BR, 2020 U.S. Dist. LEXIS 131988, at *6 (E.D.N.C. July 27, 2020)(quoting *United States v. Thompson*, 595 F.3d 544, 546-47 (4th Cir. 2010) ("Revocation sentences are governed by non-binding, policy statements in the Sentencing Guidelines Manual. Though a district court must consider the Chapter Seven policy statements and other statutory provisions applicable to revocation sentences, the court has broad discretion to impose a particular sentence." (citations omitted)).

## III. 18 U.S.C. § 3553(A) ANALYSIS

*A. Nature and Circumstances of the Offense.*

Mr. Shropshire's crimes – both in the SBA Matter and the SRV Matter – were essentially victimless, in principal instances not completed (*i.e.*, Mr. Shropshire did

4
Case 3:22-cr-00057-FDW-DCK   Document 18   Filed 11/29/22   Page 4 of 11
4857-1953-2096, v. 3

not receive any money in the SBA Matter conduct), involved very low sums of money, and involved no drugs or violence. Moreover, the SBA conduct and part of the SRV Matter conduct were motivated by Mr. Shropshire's sister, who exerts an unusually high degree of control over him because of their abusive childhood together. *See infra*, § III.B.

Turning first to the SBA Matter, Mr. Shropshire submitted false information to the SBA as part of an application for a $28,500 loan that he did not receive. PSR, ¶ 5. This type of conduct is wrong and troubling, but the dollar amount was extremely low for a federal case and the crime was never completed.

Turning next to the SRV Matter, Violation One involves the same conduct as the offense conduct covered by the SBA Matter. Doc. No. 31, p. 1. Thus, to factor this into his sentence would be to "double count" punishment for this misconduct.

Violation Three involves failure to make restitution payments. Doc. No. 31, p. 2. This is a Grade C violation for which (if in isolation) the Court would not have been required even to revoke supervised release.

Violation Four and Five arose because Mr. Shropshire lied about his employment status on a loan application for a pickup truck and did not obtain prior approval from his probation officer to apply for the loan. Doc. No. 40, p. 1. Mr. Shropshire has made payments on the loan from inception and is current on the loan. Therefore – and this in no way is intended to detract from how seriously Mr. Shropshire takes this offense – there is no victim.

5
Case 3:22-cr-00057-FDW-DCK   Document 18   Filed 11/29/22   Page 5 of 11
4857-1953-2096, v. 3

Taking all of these together, the guidelines overstate the offense. There is overlap between the SBA Matter conduct and the SRV conduct. There is overlap among the SRV violations. Two of the SRV violations – three and five – could be attributed to simple ignorance.

Finally, the Criminal History Category applied to the SRV Matter is VI, but the Criminal History Category applied to the new SBA Matter is V. If the SRV Matter applied a Category V, the low end would be 30 months instead of 33 months. The new Criminal History Category V, being more current, is a more accurate reflection of his criminal history at the time of sentencing. Therefore, application of VI causes the guidelines range to be slightly overstated.

*B. Mr. Shropshire's History and Characteristics.*

It is a sad but true fact that many defendants in Mr. Shropshire's position had terrible childhoods and no father figure (or, at least, not a positive one). Mr. Shropshire's was particularly difficult. As discussed at PSR Paragraphs 68 through 71, Mr. Shropshire was physically, mentally, and emotionally abused by his stepfather during his childhood. At four years old, he watched his stepfather choke his mother. He tried to intervene and was overpowered. While his mother worked late, his stepfather would make Mr. Shropshire and his sister face the wall for hours while the stepfather watched television. He received regular, severe beatings from his stepfather – who used a curtain rod or whip – as early as age three. The beatings were not limited to home. Once the stepfather came to school and beat Mr. Shropshire in front of his friends.

4857-1953-2096, v. 3

To further isolate Mr. Shropshire from any positive influences, his family joined a "church" when he was in middle school that prohibited him from forming relationships with friends or participating in sports.

Unsurprisingly, his stepfather's behavior was linked to drugs; unsurprisingly, Mr. Shropshire developed a drug problem too – which led to many of his bad decisions. Because of his father's addiction and life choices, Mr. Shropshire's family often did not have food to eat during his childhood. Mr. Shropshire ran away from home at an early age.

As a result of this awful childhood, Mr. Shropshire became overly attached to his sister, who pushed him into the instant crime and into the fraud underlying his 2015 case. While he fully accepts personal responsibility, he would not have been as blindly trusting and susceptible to the bad influence of his sister if he had the benefit of a reliable father figure and a healthier upbringing. He has distanced himself from her so this will not be an issue in the future, and he has become more mindful of the negative influence she has on him.

It is remarkable, with that background, how much Mr. Shropshire has turned his life around and been a positive influence. This is demonstrated by his profound acceptance of responsibility and unusually strong substantial assistance in this case. For reasons that will be explained at the hearing, this Memorandum does not delve into the dangerous and self-sacrificing nature of his assistance – but those facts will be addressed at the hearing.

One important piece of evidence that Mr. Shropshire has turned his life around is that he has maintained regular employment as a delivery driver for an extended period of time – a positive departure from his past. As the Court considers how Mr. Shropshire has changed through gainful employment and moved away from his criminal history, it is helpful to review the letter from his supervisor at Courier Express, attached at <u>Exhibit A</u>. Caleb Jones notes that Mr. Shropshire has been working for him for two years. He indicates that he respects Mr. Shropshire, who comes to work with a positive attitude and has a strong sense of duty to family, work, and his community.

The letters of support attached at <u>Exhibit A</u> show that Mr. Shropshire is a good friend who has had a tremendous, positive impact on certain people's lives. Kendra Hines writes that after an abusive boyfriend caused her to become pregnant, Mr. Shropshire "helped [her] not make any rash decisions." Her son is now an honor roll student who respects women. Robert Sanderson discusses how Mr. Shropshire helped him when he suddenly lost his job.

C. *Need for Sentence to Reflect Seriousness of Offense, Promote Respect for Law, and Provide Just Punishment for the Offense.*

All federal crimes are serious, and fraud is particularly serious. Here, however, the dollar amounts were extremely low and there was not an individual victim. The truck loan was paid, and the SBA scheme failed before money was loaned. Still, Mr. Shropshire faces potentially years in prison and has risked his life and safety and made other sacrifices that the government's Motion for Downward Departure, while appreciated, does not fully reflect. His actions since the violations were reported show

4857-1953-2096, v. 3

a sincere respect for law. A sentence of anything over a year would reflect the seriousness of the offense and provide just punishment for the offense.

*D. Need for Sentence to Afford Adequate General Deterrence.*

Mr. Shropshire will be returning to prison for crimes that netted him no benefit. The SBA fraud was never completed and would not have been particularly lucrative if it had been. The supervised release violations, to the extent that they do not overlap with the SBA Matter, are close to victimless crimes. He has been making payments on the truck note that was the center of the misstatement about employment, and was doing so before that became an issue Probation raised. Nobody would look at the "benefit" of these crimes and conclude it was worth risking years in prison.

*E. Need for Sentence Provide Specific Deterrence.*

The Court may review the PSR and be very concerned about Mr. Shropshire's criminal history and recidivism. The Court may ask what makes Mr. Shropshire different from the person he was when he committed previous crimes.

First, as the Court may remember from its review of the 2015 case, Mr. Shropshire has long been controlled and led into criminal conduct by his sister, who pushed him into the crime here. He has addressed that problem in ways that will be explained at the hearing.

Second, Mr. Shropshire has done extremely well with his employment as a delivery driver during recent years. This shows a commitment to a new, more productive, way of life.

4857-1953-2096, v. 3

Third, Mr. Shropshire has accepted responsibility and offered a kind of difficult substantial assistance that is rarely seen.

F. *Need for Sentence to Provide Needed Educational or Vocational Training or Other Correctional Treatment.*

Mr. Shropshire has a history of drug abuse and suffered a traumatic childhood. He would benefit from a drug treatment program and any psychological counseling services that are available. He requests that the Court recommend designation as close to Charlotte as possible.

## IV. CONCLUSION

WHEREFORE, Mr. Shropshire respectfully requests that the Court sentence him to fewer than 18 months of imprisonment.

Respectfully submitted this 29th day of November, 2022.

/s/ William R. Terpening
William R. Terpening
N.C. Bar No. 36418

**TERPENING LAW PLLC**
221 W. 11th Street
Charlotte, NC 28202
terpening@terpeninglaw.com
(980) 265-1700

*Counsel for Malik Shropshire*

## CERTIFICATE OF SERVICE

I certify that I have filed this **SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE** through the Court's ECF system, which constitutes service on all parties.

Dated: November 29, 2022.

/s/ William R. Terpening
William R. Terpening